16-1121 State of Delaware Petitioner v. Surface Transportation Board, et al. Mr. Pilsk for the petitioner, Mr. Vance for the respondents. Good morning, Your Honor, and may it please the Court, Eric Pilsk for the State of Delaware. In order to address the public health issue of noise from trains idling, Delaware passed SB 135 to impose a fine on trains idling at night in non-industrial areas for non-essential reasons. SB 135 specifically exempts from the statute idling for legitimate operational reasons. SB 135 carefully and precisely responds to the case law and the language of the statute of the ICCTA on preemption. It does not regulate rail transportation and fully accommodates the operational needs of railroads while protecting the residents of Delaware from unnecessary train idling noise at night. SB 135 may go right up to the line of preemption, but it does not cross over it. In contrast to SB 1- And that is because? Because it does not directly regulate rail transportation, Your Honor. Under the first prong of the preemption analysis, whether it's categorically preempted, the test is whether it directly regulates rail transportation. Can I ask you a question? If the law just barred idling at all, would you be taking the same position? I think that would go too far, and that's the lesson that you see from the AAR case and more indirectly from other cases. But what's the difference then between that law and this one with respect to the language of the preemption statute? Because it seems like both of them, either they both pertain to railroad transportation or neither do. I think the critical distinction is that just because a statute pertains to or touches on rail transportation does not mean that it is categorically preempted. It may mean that it's preempted as applied if it imposes an undue burden. But the first question is whether it directly regulates rail transportation, in which case it would be categorically preempted. Why would the one that bars idling period directly pertain and the one that you have does not directly? Because the purpose of the statute and the way it's drafted is to exclude from its coverage the operational reasons that a railroad would legitimately or appropriately need to idle to fulfill its transportation mission. And it's interesting, both the state below said that the examples that Norfolk Southern and the railroads mentioned fall within the exemptions from SB 135 and wouldn't be covered by it. Neither the board nor any of the railroads below said that the statute was written too narrowly, that is that there were reasons to idle that are excluded, that are covered by the statute. So the state has very carefully tried to say, okay, we understand railroads. You need to idle at times for legitimate reasons, and we're not trying to regulate that in any way. However, if you're idling for reasons that are remote from or secondary to the primary reason for transportation, for some discretionary reason, then we're saying you can't idle at night in a non-industrial area. So the language of the preemption statute says the remedies provided under this part with respect to the regulation of rail transportation are exclusive and preempt. And so are you saying that if the law would bar idling period, then it is with respect to regulation of rail transportation, but if it regulates idling, then it's not with respect to the regulation of rail transportation? Because the idling that the statute here regulates is not necessary or a central part of rail transportation. It's secondary or remote and falls into the kind of the as-applied analysis that we see in Susquehanna, in Del Grasso, and the other cases. So it is, as I said, the statute may go right up to the line, but it doesn't go over it because we're trying to address idling that is not necessary or a central part of rail transportation, but regulate idling that is secondary to. And some idling is necessary to rail transportation? Yes, and the statutory exemptions are designed to address that and exclude that from coverage from the statute. And here, unlike the general idling statutes, the statute does not tell the trains when to start and stop. It doesn't say how long that they can idle, and that's the key distinction with the AAR case from the Ninth Circuit, where the statute said idling for more than 15 minutes is considered unnecessary. The state here doesn't try to second-guess or dictate to the railroad what is or isn't appropriate. We have excluded from the scope of the coverage all the reasons that a railroad would legitimately need to idle and not try to regulate those, and that's really the key distinction here. But it still seems to me that the potential problem for you is that the state is the one that's seeking to determine what's essential and non-essential, and you yourself have acknowledged that there's some things that are essential by anybody's estimation, and the argument would be that the purpose of the law is to remove that kind of line drawing from the state's purview to determine what's essential and non-essential and leave that in federal hands. Well, to some extent, that's true. I think that the key point here, and there's two, one, no one below, neither the Board nor the railroads, pointed to anything in the statute that didn't address the legitimate needs for idling. That is, no one is saying it's too narrowly drawn or over-inclusive in its application, that the exemption is too narrowly drawn. And secondly, and maybe more fundamentally, the Board itself didn't engage in the kind of analysis that asks just that kind of question. Does this statute impose too much on, by its specific terms, does it cross the line and regulate any aspect of rail transportation that would legitimately fall within the federal scope where we second-guess? They say that we're second-guessing, but they never show how and never analyze the statute and don't draw those connections. They really don't do what the First Circuit said, which is to relate the activity being regulated, here the idling of train at night in non-industrial areas, to the physical transportation of persons or property. What are we doing here that actually regulates the movement of passengers and property in rail transportation? The Board didn't address that. I think that's the fundamental flaw with the Board's analysis here, because they simply didn't do the work. They took the approach of, well, they used the word idling, this is focused on idling, and that's almost all we have to do to conclude that it's categorically preempted, without looking at the precision with which the statute was drafted, what the actual scope of the statute was, and the extent to which that has the effect of actually regulating rail transportation. Without that finding, I don't think there's a basis for the Board to have made the decision or a basis for the Court to sustain it. What about the evidence that you didn't challenge before the Board that was submitted by the railroad in terms of how long it would take it to start up again if it couldn't idle, so that would delay its operation? Well, two aspects of that, Your Honor. First, that arose in the State's motion for extension of time to conduct discovery. In the motion, the State took the position, as we've stated here, that the specific examples that Norfolk Southern offered in support of its opposition were not covered by the statute that has fell within the exemptions. So there's really nothing to litigate over there because the statute didn't apply to them. Second, Norfolk Southern and its opposition specifically said, Board, you don't need to look at the impacts of the statute on our operations. You can decide this as a facial matter. And therefore, the State decided, well, we don't really need discovery in that case because the impacts are off the table and now we can just argue about what the statute itself says and what the ICCTA itself says. And I think that goes to the key to the as-applied finding as well, is that there's really no evidence for the Board to have made any decision about the actual burden of the statute on rail transportation because Norfolk Southern presented nothing that was covered by the statute and presented no evidence of any other burden. There simply was no basis for the Board to have reached a decision on the unreasonable burden prong of the preemption analysis. Well, the Board did talk about the concern about discretion left to local law. It did. It rested on discretion and also on the possibility of a patchwork. I think the court in Susquehanna addressed it well when they said that, in essence, you can't take all this. There's some minimal amount of discretion that has to vest in any law enforcement officer. Here we're talking about a relatively specific and precise list of activities that fall within the exemption, which is the kind of thing that any police officer would deal with in any kind of traffic stop or almost any kind of other stop. This isn't the kind of open-ended discretion that a police officer could use to, in an almost open-ended way, stop railroad operations. That's the focus of the undue discretion prong of the analysis. That simply isn't present here. This is really a routine matter of if there's a question, the police officer asks the engineer or the appropriate official, why are you idling? It gets an answer, can look at the statute, and make a straightforward decision. Moreover, even if the officer decides that it does fall within the statute, he issues a citation but can't stop the actual operation from continuing. So it isn't a case where rail transportation in any way would be stopped by application of the statute. It simply is subject to a citation, at the worst, which could be litigated after the fact. So help me here just understand what's going on here. I gather the zoning requirements don't solve the problem, and does Delaware have a noise statute? I don't know, Your Honor, if Delaware has a general noise statute. How loud is idling? It depends on where you are, but it is quite loud, and it disturbs people's sleep, and it disrupts their evening activities. Well, I understand that, but so do airplanes, and so do backfires of trucks. I was looking at the record to get some sense of what we're talking about. I don't have a decibel level or precise measurement for you. All I can say is that it is loud enough to disturb homes. Often the railroad tracks are very close to the homes, much closer than a runway would be, for example, or even an aircraft on approach for the most case these days. And I gather that Congress was looking toward a deregulatory scheme, so that I gather the STD has decided not to enter into this particular area. In other words, the courts have talked about the fire laws, the general laws that aren't focused, or as they put it, discriminate against railroads. So if in residential areas no one could do anything that resulted in noise between, I don't know, 10 p.m. and 8 a.m. that was five decibels or more, the railroad presumably would have to comply with that. Yes. And I think the difference is, and I guess I suppose the state could have gone that route. I don't think that that changes the basic analysis, because, I mean, as you see in the other cases, the nuisance-type cases, the courts and the STD are still going to ask the question, does that impose an unreasonable burden on a railroad, even if it doesn't call it out? The state here decided not to take that particular approach, but instead to be a more precise approach, which really gets you to the same point. You're still asking the same questions. Does this directly regulate rail transportation, and if not, does it nonetheless impose an undue burden on rail transportation? So I guess I'm not clear what the court should do then with the railroad's evidence. Well, I think, frankly, the railroad's evidence doesn't help anyone much here, because – Well, there's that last sentence in the declaration in terms of – And, you know, these are just some examples, but we think this law would create a problem for the railroad. Well, and I think that's just the point. When you read the entire declaration, the railroad's primary concern is that the amount of time it takes to restart the engine and do the air checks and the other safety checks. So their concern isn't so much that idling itself is necessary, but the impact and inconvenience entailed with restarting. On operations. On operations. Now, so there's two things going on here. One, the statute does exempt things like idling for traffic or congestion. So if that amount of time is going to cause a problem, it appears it would be exempt from coverage of the statute. On the other hand, if the railroad is idling in these residential areas at night for its convenience, to save a little bit of money, to not have to work so hard, that falls in the little bit more remote and ancillary to rail transportation where the analysis is under the as-applied type of analysis instead of the categorical analysis. And I think that's really the fundamental problem here is you've got the railroad saying, excuse me, the state saying that these activities are not covered by the statute. They fall within the exemption. And the railroad saying, no, we just got to print it out of the box. It really should fall into an as-applied analysis and look at the specifics in a particular case and analyze the facts carefully to ask the question, did it in application, did it go too far? And in application, did it impose an undue burden? All right. Why don't we hear from the board? Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Charles Vance. Here today I'm representing respondents to the Surface Transportation Board and the United States of America. In the administrative decision under review, the board correctly concluded that Delaware's anti-idling law, which on its face explicitly regulates where, when, and how locomotives may operate, is preempted by 49 U.S.C. Section 10501B. This express preemption provision has been described by the board and the courts as the broadest possible statement of Congress's intent to preempt state regulatory authority over railroad operations. So all of that would argue that those circuits which have found non-preemption were wrong. I mean, the railroad was tossing its guards into man's property, sex operations. Well, those cases and those circuits, specifically I think you're referencing the Emerson case, I mean, the court in that case found that simply the disposal of railroad ties into public waterways would not fall within the statutory definition of rail transportation. And, you know, the board and the courts have acknowledged that that's absolutely true. That's my only point, that the board has drawn a somewhat wavy line. And Delaware is trying to argue that it's right up against the line, but it's consistent with the board's approach. Well, I would posit that it's actually not a wavy line. It's actually a fairly straight line. I think that anything outside the definition of rail transportation, such as in the Florida East Coast Railway case, the storage of raw materials on railroad property that's not by a third party, that was not a rail carrier, that's not rail transportation and can be regulated by states and localities. Such as in the Del Grosso case, which involved whether activities were manufacturing or transloading, anything that would be considered manufacturing activities, even if undertaken by a railroad, that would fall outside the definition of rail transportation. But in contrast to those cases, this case really, I mean, it really involves the heart of rail transportation. Well, let me ask you, if Delaware's statute had said no idling between 10 p.m. and 8 a.m., the state has conceded, that would be a problem. Correct. So it passed the statute that says, as I understand Delaware's argument, no idling between those times, except for reasons that the railroad determines. I would think that that would probably not be preempted because it allows the railroads the discretion to operate as they see fit. So the argument is, the railroads haven't identified anything that doesn't fall within the exemptions. So therefore, there is no preemption. Well, that is certainly Delaware's argument. I mean, in the verified statement submitted by Norfolk Southern's superintendent for its Delaware operations, they did specifically include examples of operational situations that would be prohibited by the Delaware statute. Go ahead. Why did you acquiesce in the proposition that a law that says that the railroad gets to pick would not be preempted? Doesn't it still address the subject of rail transportation? Doesn't it? I mean, if you have a categorical preemption argument, the categorical preemption argument would be that a law that pertains to idling pertains to the regulation of rail transportation. And if it does, then it's preempted. Right. The question under categorical preemption is whether the state or local regulation has the effect of managing or governing rail transportation. So if it effectively cedes operational decisions to the railroads, that would not be managing the operations of the railroad. That would be allowing the railroad to operate as it sees fit. So that would not be managing or governing rail transportation. I still don't understand that. For one thing, even if you put aside categorical preemption, then you had an argument if you get to the issue on as-applied preemption that says there's a patchwork problem. If one state says railroads get to do what they want to, unless all 49 other states say the exact same thing, it seems to me you would still have a patchwork problem. So I'm not sure why you would acquiesce in the proposition that that law is not preempted, unless I'm missing something, and I might be. But even as to categorical preemption, the statute speaks in terms of remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt remedies provided under federal or state law. So either a law dealing with idling is with respect to regulation of rail transportation or it's not. I don't understand how it sometimes is and sometimes is not. I mean, this is not an issue that the Board has addressed, but I would think that something that allows the railroads to operate as they see fit would not constitute regulation because it doesn't prohibit the railroads from doing anything. So if you have, for example, if you have one state allowing railroads to operate as they see fit and all the other states do the exact same thing, in every state you don't have regulation of rail transportation. But if in one state, for example, under your hypothetical, if one state allowed a railroad to operate as it sees fit and in other states railroads are prohibited from certain operations, then the problem would be in those other states. I see. So you're construing the hypothetical to be any railroad can do anything that it wants to, which effectively means there's no law. There's no law. There's no law at all, which that I understand. If there's no law, then it's hard to see how. Well, it's not that there's no law. It's that the operational decisions are left to the railroads. No, there's no law. I mean, it's like saying, gee, we hope you won't idle. Right. You pass a statute. That's different. I don't understand your conception either because there's eventual enforcement in the hypothetical. Maybe we're doing the hypothetical differently. And so the state presumably could challenge the railroad's exercise of its discretion. So there's a regulation. Unless you have a state statute that says, gee, don't idle, please, but do what you want to do. That's different. Is that what you thought the hypothetical was? Yes, that's exactly what I thought. I'm sorry. Well, that's a pretty silly law. You should have just said it's a silly law. Well, it is a silly law. You're absolutely right. I'm sorry. What was the hypothetical you were trying to get at? If it wasn't that situation, I apologize if I misunderstood. Well, Judge Rogers is hypothetical. I didn't mean to steal the hypothetical, but I thought it was a law that would do something more than just say, do whatever you want at all times in any situation. There's no enforcement. Because why pass that law? That's a law that actually does nothing. Right. No, I completely agree. In other words, if the railroad comes to the state legislature and says, we need to do idling for the following ten reasons, and state passes a law that says no idling except for the following ten reasons, that's my hypothetical. That's hard.  Well, I'm just asking you. I'm curious. I don't know. What's hard about that? Well, I doubt you would get all of the railroads across the country to agree to any single set of ten conditions. The question isn't preempted. Right. It absolutely would be preempted because it would be purporting to you. It took you 43 seconds to say that. How could that be hard under your argument? No, it absolutely isn't. But, see, that's the problem, I think, with the laws. It's written, even, whether in Judge Edwards' view it's really any law. That's why I was pushing you a little harder on this. So if Delaware has a noise statute, between 10 p.m. and 8 a.m., nothing that makes noise up to five decibels. Any problem? The problem with that, just with, you know, the same with any nuisance claim regarding railroad operations, is that when applied against a railroad, that would have the effect of managing or governing rail operations because it would be effectively preventing. So would, you know, the fire laws, some of the zoning laws? It does affect. I mean, the railroads are not operating willy-nilly. No, they certainly aren't. The building codes and the fire codes and the electrical codes, those are generally applicable local regulations that require railroads to comply. Costs of money may affect how they operate. Well, if building, fire, or electrical codes actually did affect how railroads conducted their operations, then, yes, they would be preemphasized. I'm a little confused. In answer to all these questions, I take it your argument is on an as-applied basis rather than categorical when you have a generally applicable law, and then on an as-applied basis, there's a question about the degree of burden. Correct. Or are you saying that with a noise ordinance that it's actually categorically preempted? Well, generally speaking, generally applicable laws will be examined under an as-applied challenge. Isn't a noise ordinance a generally applicable law, or is it? It is. It is, absolutely. But, like, in the pace in the Guckenberg cases, even generally applicable laws, if applied against a railroad, in, say, a nuisance claim or a common law tort claim, if it would have the effect of, you know, prohibiting railroads from operating in certain ways, that would have the effect of managing or governing their rail operations and would be preempted categorically. So has anybody asked the STB to develop a noise code? No one ever has. Has the STB ever spoken on this subject? I don't believe so. I'm not entirely sure about that. I mean, Section 10501B gives the Board exclusive jurisdiction over rail transportation. But, you know, in accordance with Congress's general deregulatory effort with regards when it passed the ICC Termination Act, you know, the Board has not found that micromanaging railroad operations is appropriate. I don't understand what the difference is between a generally applicable noise law and a generally applicable building codes law or fire codes law. Why does the one beget categorical preemption in every instance and the other one begets as-applied analysis in every instance? Aren't they both just generally applicable laws? They are both generally applicable laws. But I think with the noise code, if liability was found against a railroad, they would be effectively prevented from conducting operations, whereas if you apply a building or a fire code to railroad facilities, that would not prevent them from conducting operations. So it's the effect of the law? It's the potential effect of the law if it's enforced that determines whether there's categorical preemption? Correct. It's whether the regulation would have the effect of managing or governing rail transportation. And when you have direct regulation of locomotive operations, such as with the Delaware statute, that's clearly managing or governing rail operations. When you have a generally applicable law like a noise code or something of that nature, that, even though it's generally applicable, it could still have the effect of managing or governing rail operations and would be categorical preemption. That's the point I was trying to make with my electrical code. You know, the state code requires some very fancy hookups. It costs the railroad a lot of money. They don't think it's necessary. The state does. So the railroad has to make some adjustments to its operations in order to comply with state law. Here, a noise law, I don't know what it would say, but it could say if you're within, I don't know, 500 feet of a residentially zoned area, you can't idle between 10 and 8. And so the railroad says, fine, we'll move down a couple of miles and idle there. I mean, it's not as though it's an either-or situation, and that's the way you're positing it, it seems to me. Well, the courts and the board have drawn a fairly clear line between building electrical codes, which the courts and the board do not believe would prohibit or govern rail operations, and anything that involves operational decisions of the railroads that clearly manages or governs rail operations. Well, if the railroads want to blow their whistles all night long at an extraordinary pitch, such as drives everybody crazy, whether it's sleep or not, the state has no recourse, and the SDV won't do anything. So the only option is to go to Congress. Well, I mean, states and localities always have the option to go to Congress and argue that the particular concerns that they have should outweigh... So your understanding of the SDV's authorization is that it has no obligation regarding police powers, because those are still within the state's control. But when the state exercises those powers, anything touching upon operations, even if it's just a matter of inconvenience or spending some more money, is categorically preempted. The test is whether it would have the effect of managing or governing rail operations, yes. So anything that meets that test would be categorically preempted. Well, I gave you my electrical hypothetical. That has the effect. That's why I said I think the line is wavier than you, at least the circuits seem to think it's a little wavier than you're suggesting. And to get back to your point earlier, I mean, anything beyond going to Congress and seeking a change to the law, I mean, anything that would really fall outside the definitions of rail transportation, so any occurrences that would, like in the Smith case, anything that was done for the sole purpose of harassment, so idling or horn blowing or anything of that nature that done for the sole purpose of harassment would fall outside the definition of rail transportation and would be the subject of a proper nuisance complaint, potentially. The Board has never addressed that. I see that I'm over my time, unless there are any other questions. Thank you. Thank you. The Board and the United States request that the petition for review be denied. Thank you very much. Thank you. Thank you, Your Honor. Two points. One, the law, the line between categorical preemption and non-categorical preemption isn't as either bold or as far over as counsel suggests, and I think that the First Circuit in Del Grasso made it clear that the analysis requires the Board to relate the activity being regulated to, quote, the physical movement of passengers or property as opposed to cost efficiency. That's exactly what we have here. And it's fairly easy. I mean, you have a very direct regulation. It's about as direct as you can get. It has to do with the operation movement. It's not whimsical. It's not like blowing a whistle all night to be mean-spirited. This is about how the train runs, stops, runs, stops, runs. It isn't really, quite frankly, the effects test seems to me to reach unnecessarily. We don't have to worry about whether it has an effect. It is direct. Well, two things, Your Honor. First, of course, we're not telling them when to start and stop. It's only whether the engine is idling or not. No, I understand. I'm using it. I'm sorry. Go ahead. If that were true, we started off by asking whether a law that just bars idling, period, would be categorically preempted. You said yes, but your answer to Judge Edwards was that we're not talking about starting or stopping. We're talking about idling. But if that were true, then the law that bans idling altogether would be okay. So that can't be an answer. Fair enough, and I'm trying to move down the line. So first of all, we're not talking about the direct regulation of the actual movement. Secondly, the way the statute is drafted, as we've discussed, is to exclude the legitimate reasons, the operational reasons, that a railroad would need to idle and only tries to focus on the times when a railroad is idling for cost efficiency or its own convenience reasons that are not necessary for rail transportation, but really for the railroad's own convenience. And that's the key aspect of the regulation of the state statute. The board didn't address that the railroads didn't address. Instead, the board simply relied on the notion because there are some times when idling is necessary, any regulation that prevents any idling is preempted. And that's too broad and not as specific of analysis as required by the ICCTA. And for that reason and for the similar reason that they didn't, the board did not address the actual impacts of the statute on the railroad with any supported findings, that the decision simply lacks support, isn't supported as a reasoned decision under the APA, and should be vacated. Thank you. We'll take the case under advisement.
judges: Rogers, Srinivasan, Edwards